**Deborah Sue PAGANA–FAY, Plaintiff,**

**v.**

**WASHINGTON SUBURBAN SANITARY COMMISSION, Defendant.**

**Civ. No. H–90–848.**

United States District Court, D. Maryland.

July 8, 1992.

Errol D. Brown, Landover, Md., for plaintiff.

Joel A. Kramer and Sheila D. Collins, Laurel, Md., for defendant.

## MEMORANDUM OPINION

ALEXANDER HARVEY, II, Senior District Judge.

On March 22, 1990, Deborah Sue Pagana–Fay, plaintiff herein, filed a *pro se* complaint in this Court seeking relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*[1] Plaintiff is a white female and she has here sued Washington Suburban Sanitary Commission (the "WSSC"), her former employer, alleging sex discrimination.[2]

Following extensive discovery by the parties, various pretrial rulings were made by the Court, and a final pretrial conference was held on July 12, 1991. A joint Pretrial Order was entered on October 3, 1991, and the case was scheduled for a non-jury trial commencing on November 4, 1991. Be-cause the undersigned judge was then engaged in the trial of a lengthy patent case, the trial in this case could not be reached on November 4, 1991. After consulting with counsel, the Court set April 6, 1992 as the new date for the non-jury trial.

On November 21, 1991, the Civil Rights Act of 1991[3] (hereinafter "the 1991 Act") became law. Counsel for plaintiff then filed a motion seeking an Order of Court which would, *inter alia,* permit this case to proceed to trial before a jury pursuant to the 1991 Act. Following discussions with counsel, the Court entered an Order on March 31, 1992 permitting the case to proceed to trial before a jury pursuant to the 1991 Act and providing that the trial would be held before a jury pursuant to the Civil Rights Act of 1991 and simultaneously before the Court sitting without a jury pursuant to the Civil Rights Act of 1964. That Order specifically provided that it was not to be construed as a final ruling by the Court on the asserted retroactivity of the 1991 Act.

On April 6, 1992, the case came on for trial before a jury and also before the Court sitting without a jury. The trial lasted some six days. Various witnesses testified, and numerous exhibits were admitted in evidence. Plaintiff presented claims of sexual harassment and retaliation and in the alternative asserted that this was a so-called "mixed motive" case.[4] After deliberating over a period of two days, the jury returned a verdict in favor of plaintiff both on her claim of sexual harassment and on her claim of retaliation. Damages in the amount of $50,000 were awarded to plaintiff on her sexual harassment claim. No damages were awarded on her claim of retaliation. The Court then took under advisement in the non-jury case the

---

1. Although she paid the filing fee in this case, plaintiff had prepared the complaint herself and requested that the Court appoint an attorney to represent her. Following its review of the complaint and the exhibits attached thereto, the Court appointed Errol D. Brown, Esq. to represent plaintiff in this litigation.

2. The amended complaint also named ten employees of the WSSC as defendants in the case and asserted several claims under state law. The state law claims were dismissed pursuant to

the Court's Memorandum and Order of June 13, 1991, and the individuals were dismissed as defendants by Order dated September 24, 1991.

3. Public Law No. 102–166.

4. As this Court has previously ruled, a claim that a defendant acted with "mixed motives" does not constitute a separate cause of action under Title VII.

claims asserted by plaintiff. Counsel were directed to submit proposed findings of fact for consideration by the Court in reaching a decision in the non-jury aspect of the case.

Thereafter, the parties filed various post-trial motions. Presently pending before the Court are the following motions: (1) defendant's motion for judgment notwithstanding the verdict or in the alternative for a new trial; (2) plaintiff's motion for injunctive relief, and (3) plaintiff's motion for attorneys' fees. Lengthy memoranda in support of and in opposition to these post-trial motions have been filed by the parties and reviewed by the Court. In addition, counsel for the parties have submitted proposed findings of fact and separate lists citing federal court decisions which have considered whether the Civil Rights Act of 1991 should be applied retroactively in a case of this sort. Oral argument has been heard in open Court, during which counsel addressed the pending motions and also the non-jury aspects of the case.

After a review of the exhibits and after considering the testimony, the parties' briefs and counsel's arguments, this Court has concluded (1) that the 1991 Act should not be applied retroactively and that plaintiff was not entitled to proceed to trial before a jury on her Title VII claims; (2) that defendant's motion for judgment notwithstanding the verdict must be granted and that the jury verdict entered in this case must be set aside; (3) that judgment should be entered in favor of defendant WSSC in the case tried before the Court sitting without a jury and (4) that plaintiff's motion for injunctive relief and plaintiff's motion for attorneys' fees should be denied.

I

*Background Facts*

Plaintiff Deborah Sue Pagana–Fay was formerly employed as a Construction Inspector by the WSSC. She worked for the WSSC from 1968 until she was discharged in September of 1988. Throughout her employment and particularly during the later years before she was discharged, plaintiff filed numerous complaints against defendant both internally and with the Equal Employment Opportunity Commission (the "EEOC"), alleging sex discrimination, retaliation and sexual harassment.[5] Plaintiff had some success in attaining her objectives in earlier years. However, in the years after 1985, plaintiff would consistently disregard orders and directives received from various male supervisors and, when she was disciplined, would claim sex discrimination. In 1987, plaintiff filed a charge with the EEOC alleging sexual harassment and retaliation. Following an investigation, the EEOC concluded that the WSSC had not violated Title VII. Following her discharge on September 21, 1988, plaintiff filed another charge with the EEOC alleging retaliation. Once again, the EEOC found no violation.

The WSSC had adopted a policy whereby an employee who had been disciplined by receiving five PANs (Personnel Action Notifications) within the period of one year was subject to discharge. Beginning in April of 1988 and continuing until August of 1988, plaintiff continuously resisted actions taken by her male supervisors. As a result, she received during that period five PANs for insubordination, for refusing to comply with orders from her supervisor and for hindering an official investigation. Pursuant to WSSC personnel policy, she was recommended for discharge on September 21, 1988.

In this Title VII suit, plaintiff claims that during 1988 she was sexually harassed by her superiors at WSSC and that she was fired in retaliation for engaging in activity protected by Title VII. Damages and other relief are sought.

II

*Retroactivity of the Civil Rights Act of 1991*

This action had been pending for almost 20 months when the Civil Rights Act of

---

5. In 1974, plaintiff had joined in a class action against WSSC which was filed in this Court and which resulted in the entry of a consent decree. *National Organization for Women (NOW) v. Washington Suburban Sanitary Commission,* Civil No. Y–74–432.

1991 became law on November 21, 1991. This suit had been filed on March 22, 1990. Accordingly, plaintiff is entitled to a jury trial only if § 102 of the 1991 Act applies retroactively. When this case came on for trial on April 6, 1992, only a few federal circuit courts had considered whether or not the 1991 Act applies retroactively. This Court therefore postponed a final determination of plaintiff's right to a jury trial and ordered that this action be tried both before a jury and before the Court simultaneously. This procedure was designed to avoid a retrial of the case because of a later ruling by the Fourth Circuit or the Supreme Court concerning retroactivity of the 1991 Act.

■ Although the Fourth Circuit has not as yet addressed this issue, three other circuit courts have recently determined that provisions of the 1991 Act do not apply retroactively. *See Vogel v. City of Cincinnati,* 959 F.2d 594 (6th Cir.1992); *Fray v. Omaha World Herald Co.,* 960 F.2d 1370 (8th Cir.1992); and *Mozee v. American Commercial Marine Service Co.,* 963 F.2d 929 (7th Cir.1992). In view of the guidance provided by these recent appellate decisions, this Court is now prepared to rule upon plaintiff's request for a jury trial. For the reasons to be stated, this Court has determined that § 102 of the 1991 Act does not apply retroactively and that plaintiff has no right in this Title VII case to have her claims determined by a jury.

A review of the language and legislative history of the 1991 Act indicates that Congress did not clearly indicate an intention that the 1991 Act should be applied retroactively. As the Sixth, Seventh and Eighth Circuits each found in the cases cited herein, the language of the Act is ambiguous, and its legislative history is equivocal. This Court must therefore look beyond the Act's language and legislative history in order to decide the issue at hand.

■ The EEOC is the federal agency responsible for the administration of Title VII, and the EEOC has determined that provisions of the 1991 Act pertaining to damages apply only to conduct occurring after the date of enactment. *See* EEOC Policy Guidance Notice No. 915.002 (December 27, 1991). In the absence of a clear legislative intent, courts should defer to the reasonable construction of a statute by the agency which administers the statute. *Chevron U.S.A. Inc. v. Natural Resources Defense Counsel,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984). Although its ruling did not address the provisions of the 1991 Act relating to a plaintiff's right to a jury trial, the EEOC's determination of non-retroactivity would appear to be equally applicable to the jury trial issue as well. Thus, the EEOC's interpretation of the 1991 Act suggests that the Act's jury trial provision does not apply to cases filed before November 21, 1991.

An analysis of Supreme Court decisions discussing whether or not statutes are presumed to have a retroactive effect likewise indicates that the question before the Court should be answered in the negative. As many commentators and courts have noted, there are two apparently contradictory lines of Supreme Court decisions concerning the retroactive effect of legislative enactments. Until 1969, federal courts adhered to the age-old principle that statutes are presumed to have no retroactive effect in the absence of a clear legislative intent to the contrary. *See Greene v. United States,* 376 U.S. 149, 160, 84 S.Ct. 615, 621, 11 L.Ed.2d 576 (1964); Smead, *The Rule Against Retroactive Legislation; A Basic Principle of Jurisprudence,* 20 Minn. L.Rev. 775 (1936). However, without acknowledging its departure from precedent, the Supreme Court in *Thorpe v. Housing Authority of Durham,* 393 U.S. 268, 281–83, 89 S.Ct. 518, 525–27, 21 L.Ed.2d 474 (1969), and *Bradley v. Richmond School Board,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974), indicated that a new statute should be retroactively applied unless (1) there is legislative intent to the contrary, or (2) such an application would result "in manifest injustice."

In recent cases, the Supreme Court, although not expressly overruling *Thorpe* and *Bradley,* has reconfirmed the traditional presumption against retroactivity. *See United States v. Security Industrial*

*Bank,* 459 U.S. 70, 79–80, 103 S.Ct. 407, 413, 74 L.Ed.2d 235 (1982); *Bennett v. New Jersey,* 470 U.S. 632, 639, 105 S.Ct. 1555, 1560, 84 L.Ed.2d 572 (1985); *Bowen v. Georgetown University Hospital,* 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988). In *Bowen,* Justice Kennedy wrote for a unanimous Court and, without mentioning *Thorpe* or *Bradley,* stated at 208, 109 S.Ct. at 471:

> Retroactivity is not favored in the law. Thus, congressional enactments ... will not be construed to have retroactive effect unless their language requires this result.

More recently, in *Kaiser Aluminum & Chemical Corp. v. Bonjorno,* 494 U.S. 827, 837, 110 S.Ct. 1570, 1577, 108 L.Ed.2d 842 (1990), a majority of the Court found it unnecessary to resolve what was characterized as the "apparent tension" between *Bowen* and *Bradley* since the statute there at issue was clearly intended to have no retroactive effect. In his concurring opinion in *Bonjorno,* Justice Scalia recognized that the two lines of cases are in "irreconcilable conflict" and advocated that *Bradley* be expressly overruled. 494 U.S. at 841, 110 S.Ct. at 1579. Referring to *Bradley,* Justice Scalia wrote that "We should turn this frog back to a prince as soon as possible." *Id.* at 857, 110 S.Ct. at 1587.

To the extent that *Bradley* and *Bowen* are inconsistent, this Court, like the three Circuit Courts which have addressed the question, is persuaded that *Bowen* is the better view. Indeed, in *Leland v. Fed. Ins. Adm'r,* 934 F.2d 524, 527 (1991), the Fourth Circuit expressly applied the presumption against retroactivity set forth in *Bowen.*

In the absence of a clear legislative intent, this Court has determined that § 102 of the 1991 Act should not be applied retroactively in this case. Not only had this case been instituted more than 20 months before enactment of the 1991 Act, but it

had even been scheduled for a non-jury trial before the 1991 Act became law. It was only because of the fortuitous occurrence that the undersigned judge was engaged in another trial that the trial in this case could not be reached on November 4, 1991, the date originally assigned. Had the non-jury trial gone forward on the date originally scheduled, the trial would have been completed before the 1991 Act became law.

This Court finds it significant that district courts in South Carolina, North Carolina, Virginia and West Virginia have all held that the 1991 Act should not be applied retroactively. *Wallace v. Housing Authority of the City of Columbia,* 791 F.Supp. 137 (D.S.C.1992); *Percell v. IBM,* 785 F.Supp. 1229 (E.D.N.C.1992); *Patterson v. McLean Credit Union,* 784 F.Supp. 268 (M.D.N.C.1992); *Khandelwal v. Compuadd Corp.,* 780 F.Supp. 1077 (E.D.Va. 1992); *Rowson v. County of Arlington,* 786 F.Supp. 555 (E.D.Va.1992); and *McCormick v. Consolidated Coal Company,* 786 F.Supp. 563 (N.D.W.Va.1992). Thus, six different district judges in the Fourth Circuit have agreed that the 1991 Act should not be given retroactive application. This Court finds the reasoning of those other district judges in this Circuit to be highly persuasive.[6]

For these reasons, this Court has concluded that plaintiff was not entitled to have her Title VII claims heard and decided by a jury. Accordingly, defendant's motion for judgment notwithstanding the verdict will be granted, and the verdict rendered by the jury in this case will be set aside.[7]

## III

### *Plaintiff's Title VII Claims*

Sitting without a jury, the Court will now address plaintiff's Title VII claims. Plaintiff has essentially presented two separate

---

**6.** Counsel have cited no district court decisions in the Fourth Circuit upholding the retroactivity of the 1991 Act.

**7.** In view of the Court's ruling on the issue of retroactivity, it is not necessary to address the other arguments advanced by defendant in support of its motion for judgment notwithstanding the verdict or for a new trial, including defendant's contention that the jury was impermissibly swayed by plaintiff's emotional testimony. *See Williams v. Cerberonics,* 871 F.2d 452, 459 (4th Cir.1989).

claims under Title VII, namely that she was in recent years subjected to sexual harassment while employed by defendant and that defendant retaliated against her for engaging in activity protected by Title VII.

Much of the testimony adduced at the trial was conflicting. In considering as the fact finder plaintiff's Title VII claims, the Court, in resolving the issues of fact, has given due regard to the credibility of the witnesses and the weight their testimony deserves. The Court's findings of fact and conclusions of law under Rule 52(a), F.R.Civ.P., are embodied in this Memorandum Opinion whether or not expressly so characterized.

### (a)
### *Sexual Harassment*

■ Insofar as plaintiff's claim of sexual harassment is concerned, plaintiff is required to prove by a preponderance of the evidence that she was subjected by one or more of her supervisors to sexual harassment. When a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor discriminates on the basis of sex. *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 64, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986). Unwelcomed sexual advances or verbal or physical conduct of a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment; (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual; or (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment. *Id.* at 65, 106 S.Ct. at 2404, 29 C.F.R. § 1604.11.

■ However, not all work place conduct that may be described as "harassment" affects a "term, condition or privilege" of employment within the meaning of Title VII. *Vinson, supra* at 67, 106 S.Ct. at 2405; *Rogers v. EEOC*, 454 F.2d 234 (5th Cir.1971), *cert. denied*, 406 U.S. 957,

92 S.Ct. 2058, 32 L.Ed.2d 343 (1972). Mere utterance of an epithet which engenders offensive feelings in a female employee would not affect the conditions of employment to a sufficiently significant degree to violate Title VII. *Vinson, supra*, 477 U.S. at 67, 106 S.Ct. at 2405, citing *Rogers, supra*. For sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment. *Id.*, citing *Henson v. Dundee*, 682 F.2d 897, 902 (11th Cir.1982).

■ To prove a claim of sexual harassment based on the allegation that sex discrimination has created a hostile or abusive work environment, a plaintiff must first make a *prima facie* showing that sexually harassing actions took place. *Katz v. Dole*, 709 F.2d 251, 256 (4th Cir.1983); *Dwyer v. Smith*, 867 F.2d 184, 187 (4th Cir.1989); *Swentek v. USAir, Inc.*, 830 F.2d 552, 558 (4th Cir.1987). If this burden is met, the employer may then rebut the showing either directly, by proving that the events did not take place, or indirectly, by showing that they were isolated or genuinely trivial. Second, the plaintiff must show that the employer knew or should have known of the harassment and took no effective action to correct the situation. Any such showing can also be rebutted by the employer either directly, or by pointing to prompt remedial action reasonably calculated to end the harassment.

On the record in this case, the Court finds and concludes that plaintiff has failed to prove by a preponderance of the evidence that she was subjected to sexual harassment by one or more of her supervisors. The events relied upon by plaintiff did not affect the conditions of her employment to a sufficiently significant degree to amount to a violation of Title VII. The incidents in question were isolated and were not sufficiently severe or pervasive to alter the conditions of plaintiff's employment and create an abusive working environment.

Various separate incidents are relied upon by plaintiff in support of her claim of sexual harassment. Plaintiff first asserts that, during a period when John Byars was her supervisor, she was required to attend a seminar on steel pipe held in 1987. Plaintiff objected to sexually offensive comments made at that seminar and also to the nature of the entertainment provided at the seminar. To appease plaintiff and because she had been complaining of sexual harassment by Byars, plaintiff was thereafter assigned to a new supervisor, Allan Perrie. In November of 1987, plaintiff was assigned to Robert Bond as her supervisor as a result of complaints that she had been receiving preferential treatment from Perrie.

Plaintiff subsequently directed complaints of sexual harassment at Bond. According to plaintiff, on June 7, 1988, while she and Bond were doing inspection work in the field, Bond used the word "cocksucker" and fondled his genitals in plaintiff's presence.

Plaintiff has also accused Herb Butler of sexual harassment. Butler was the Director of defendant's Human Relations Division. On May 18, 1988, he responded to a written memorandum from plaintiff and rejected her request for a new hearing. Butler criticized the tone and context of plaintiff's memorandum and suggested that further communications from her "should be expressed in a courteous, business-like and reasonable manner." According to plaintiff, Butler's memorandum was sexually stereotypical and addressed her as "a little girl needing guidance from daddy."

Plaintiff has also complained of an incident which occurred in the field on August 10, 1988 when a male employee of Rapp Contracting Company, a subcontractor of defendant (hereinafter "Rapp"), operated a backhoe in such a manner that dirt was caused to fall out from under her feet. According to plaintiff, WSSC's failure to insist that the subcontractor be disciplined amounted to sexual harassment and sex discrimination.[8]

These incidents, whether considered separately or together, do not constitute sexual harassment as that concept was defined by the Supreme Court in *Vinson.* The events were isolated and occurred at different times in 1987 and 1988. Several of them were trivial, and different representatives of defendant were involved. There is no evidence that the remarks or events at the seminar in 1987 were planned or orchestrated by Byars or by any other representative of defendant WSSC with the intention of subjecting plaintiff to sexual harassment.

After hearing and seeing the witnesses and reviewing the exhibits admitted in evidence, the Court will credit Bond's testimony concerning the incident in June of 1988. Bond's account of this incident was corroborated by the testimony of Wayne Wilson. Wilson was present at the time and did not see or hear what plaintiff described. No weight will be given to the version of this occurrence related by plaintiff herself. Even if the particular event did occur and the foul language uttered and the gesture committed by Bond, this was merely an isolated incident. There is no other evidence presented by plaintiff indicating that Bond, during the time that he was plaintiff's superior, made sexually offensive remarks or that he acted in a sexually offensive manner. The proof is therefore lacking in this case that any acts or conduct of Bond were sufficiently severe or pervasive as to create an abusive working environment.

There is no support in the record for plaintiff's contention that the Butler memorandum of May 18, 1988 constituted sex discrimination because it used sexually stereotypical language. What Butler said was entirely reasonable under the circumstances. Plaintiff herself had used abusive and derogatory language in her written

---

**8.** Plaintiff may not, as argued, base her claim of harassment in this case on the refusal of defendant to promote her in 1985. That occurrence was the subject of an earlier EEOC charge and is not a part of the jurisdictional basis for this Title VII suit.

memoranda,[9] and in responding Butler did little more than request that she be more business-like and reasonable in the complaints that she constantly addressed to management.

The August 1988 allegedly harassing act relied upon by plaintiff was not even committed by a representative of defendant but by a third party, namely an employee of Rapp Contracting Company. Insofar as this incident is concerned, plaintiff's essential contention is that she was subjected to sexual harassment because defendant did not take corrective action against the third party. However, the evidence indicates that the matter was carefully investigated by proper representatives of WSSC and that the conclusion was reached that the operator of the backhoe did not act intentionally when earth was dislodged near plaintiff. Indeed, plaintiff can hardly complain of the conclusion reached. She herself refused to participate in the investigation, although ordered by her supervisor to do so.

That plaintiff constantly had conflicts with her male superiors is quite evident. However, she brought these conflicts on herself. Her officious attitude antagonized her male superiors and led to disciplinary action which she has characterized as sex discrimination. Proof does not exist in this case that there was an intimidating, hostile or offensive working environment caused by sexual harassment on the part of plaintiff's superiors. Indeed, after seeing and hearing plaintiff on the witness stand, the Court finds it hard to believe that plaintiff would be intimidated by any one. She was feisty, assertive and outspoken. Rather than being intimidated, she was the one who sought to gain her way with male co-workers and superiors by constant threats that she would file internal complaints, charges of discrimination with the EEOC or lawsuits if the others crossed her in any significant way.

Evidence supporting this Court's rejection of plaintiff's claim of sexual harass-

ment includes the determination made by the EEOC in Charge No. 120–87–1035. Plaintiff claimed in that proceeding brought before the EEOC against defendant that she had been discriminated against in violation of her Title VII rights by being denied an upgrade because of her sex and by being sexually harassed. Following an investigation, the EEOC issued a Determination dated June 5, 1989 finding that the evidence obtained during the investigation did not establish a violation of Title VII.

For all these reasons, the Court finds and concludes that plaintiff has failed to prove that she is entitled to relief in this case under Title VII because she was sexually harassed by her employer.

### (b)

### Retaliation

■ In a Title VII case such as this one, an employee has the initial burden of establishing a *prima facie* case of intentional discrimination by a preponderance of the evidence. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The plaintiff here must show (1) that she is a member of protected group; (2) that she was qualified for the position which she held at the time of the retaliatory action; and (3) that in spite of her qualifications, she was subjected to a retaliatory discharge or other retaliatory action. *Smith v. University of North Carolina*, 632 F.2d 316, 332 (4th Cir.1980).

Establishment of a *prima facie* case creates an inference that unlawful discrimination was the result of the employment action. If a plaintiff has satisfied this initial requirement, the employer, to rebut the inference, must articulate a legitimate, non-discriminatory reason for the action taken. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. If the employer has produced a legitimate non-discriminatory reason for the adverse action, the employee then bears the ultimate burden of proving retaliation by demonstrating that the employer's

---

**9.** Plaintiff had claimed that defendant's internal grievance procedure was "a witch hunt" and "a   fix."

proffered reason was pretextual. *Id.* at 804, 93 S.Ct. at 1825. At all times, the ultimate burden of persuasion remains on the plaintiff to prove intentional discrimination. *See Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).

In a case such as this one in which the plaintiff has asserted a claim of retaliation, the plaintiff's *prima facie* case consists of the following three elements: (1) that the employee engaged in protected activity; (2) that the employer took adverse employment action against the employee; and (3) that a causal connection existed between the protected activity and the adverse action. *Ross v. Communications Satellite Corp*, 759 F.2d 355, 365 (4th Cir.1985).

For a plaintiff to disprove a legitimate, non-discriminatory explanation for the alleged retaliatory action taken, plaintiff must show that the adverse action would not have occurred but for the protected conduct. *Ross, supra* at 366. The mere fact that plaintiff is a woman and that she was discharged from her employment is not sufficient in and of itself to establish her claim of retaliation. The "but for" standard serves the salutary function of directing the fact finder's attention to the predominate reason for the employer's adverse action. *Id.* Title VII does not shield an employee from normal sanctions for misconduct. It would be incongruous and not required by law were an employee, even one engaged in protected conduct, to be given a stranglehold on a job irrespective of her material, work-related flaws. *Ross, supra* at 366.

On the record here, the Court finds and concludes that plaintiff has not met her initial burden of establishing a *prima facie* case of retaliation by a preponderance of the evidence. There is little doubt that plaintiff has satisfied the first two of the three elements of a *prima facie* case. Clearly, she engaged in protected activity by filing charges of sex discrimination with the EEOC and by engaging in other conduct protected by Title VII. Furthermore, it is not disputed that her employer took adverse employment action against her by terminating her employment. However, plaintiff has not met her burden of showing by a preponderance of the evidence that there was a causal connection between her filing of charges or her engaging in other protected conduct and the termination of her employment by defendant. *See Ross, supra* at 365. Indeed, the evidence indicates that there was no connection whatsoever between her discharge and the fact that she engaged in protected activity.

Plaintiff was discharged because of her continuing insubordination and her repeated refusal to accept criticism and comply with orders of her male superiors. She repeatedly challenged and ignored her superiors' orders and refused to cooperate with directives with which she disagreed. Credible evidence of record in this case indicates that there was a sound basis for the issuance by defendant of each of the five PANs received by plaintiff. Plaintiff was discharged on September 21, 1988 pursuant to an established personnel policy of defendant WSSC. She had received five PANs within a period of some five months in 1988, and § 2.12 of the WSSC Personnel Policy and Benefits Program required that her employment be accordingly terminated.

In April of 1988, plaintiff's supervisor was Robert Bond. On April 13, 1988, Bond noticed that plaintiff was doing typing in the office of Allan Perrie. Bond directed plaintiff to report to her assigned project in the field. Plaintiff refused to do so, informing Bond that it was more important for her to type letters which she was preparing for Perrie than to be at the project. Bond again instructed her to report to the project, and plaintiff once again declined to do so until she completed what she was doing for Perrie. A Group I PAN was issued that same day for insubordination. Defendant's action was fully justified by plaintiff's refusal to comply with Bond's orders.

A second PAN was thereafter issued by Bond that same day. Later in the morning of April 13, 1988, Bond directed plaintiff to attend a pre-construction meeting the next day at the Temple Hills Depot. Plaintiff

told Bond that she would not accept assignment to that project. Plaintiff asserted that the project should be assigned to Claudius Jefferson, a black male. She stated that she would sue defendant and any one associated with the decision to assign her to this project if Jefferson did not receive the assignment. She was thereupon charged by Bond with gross insubordination in a second PAN dated April 13, 1988, and she was suspended for five days. The issuance of this Group II PAN was also fully justified.

The third PAN received by plaintiff resulted from the previously discussed allegation that her supervisor Bond, in her presence at a job site had made sexually offensive remarks and acted in a sexually offensive manner. Plaintiff addressed a memorandum to Bond accusing him of this improper behavior during a site meeting on June 7, 1988. Copies of this memorandum were sent to various other management personnel and to the EEOC. Richard Rice, Bond's superior, investigated the matter to determine if there was substance to plaintiff's accusations. Rice interviewed plaintiff, Bond and Wayne Wilson, all of whom were present at the scene when the allegedly offensive conduct occurred. Rice concluded that plaintiff's allegations were untrue, and a PAN dated June 17, 1988 was issued for insubordination. Rice found plaintiff's charges to be disruptive and to have needlessly interfered with operations of the WSSC. Plaintiff was warned that a further continuation of behavior causing organizational disruption might result in a recommendation that her employment be terminated. From the evidence produced at the trial, this Court would agree with Rice's conclusion that plaintiff's allegations concerning the events of June 7, 1988 were untrue. Issuance of the PAN in question was therefore fully justified.

The fourth PAN received by plaintiff resulted from the incident which occurred on August 10, 1988. Plaintiff complained to WSSC management that a backhoe operator employed by Rapp deliberately hit a trench box on which plaintiff was standing, causing dirt to fall out from under her feet. The matter was thereafter investigated by

Roger Stultz. A meeting was held on August 11, 1988 attended by plaintiff, several representatives of Rapp, Stultz and Wayne Wilson, the contract manager. During the course of the meeting, plaintiff decided to leave. Stultz told her not to do so. Plaintiff left anyway, and she was thereafter charged in a PAN with insubordination. The PAN itself was not issued until September 21, 1988, because final action was deferred until Stultz could complete his investigation. The action taken was fully justified by the circumstances.

The fifth PAN issued to plaintiff resulted from her subsequent refusal to cooperate in defendant's investigation of the incident of August 10, 1988. Following the initial meeting held by Stultz on August 11, 1988, the Security Services Office of WSSC was requested to perform an in depth investigation of the incident. Bond instructed plaintiff to report to the Security Services Office on August 16, 1988 to meet with the investigator, H.F. Bottjer. After initially refusing to meet with Bottjer, plaintiff did report to his office the next day. However, she refused to discuss the matter with Bottjer because he was a male and because, according to plaintiff, he was not qualified to undertake the investigation. Without the assistance of plaintiff, Bottjer later completed his investigation and concluded that the Rapp employee who operated the backhoe had not intentionally poured dirt on plaintiff and had not purposely caused dirt to fall out from under her feet. In the PAN issued on September 21, 1988, plaintiff was charged with hindering an official WSSC investigation. Facts of record support the issuance of this PAN.

Objective evidence exists to support the issuance of each of the five PANs in question by representatives of defendant. This Court concludes that plaintiff was not discharged in retaliation for engaging in protected activity. Rather, her discharge was the result of proper disciplinary action taken against her by defendant WSSC.

After being informed that a recommendation was being made that her employment be terminated, plaintiff filed a claim of retaliation with the EEOC. Charge No.

120–88–1559. Following an investigation, the EEOC issued a final Determination dated January 12, 1990 finding that the evidence obtained during the investigation did not establish a violation of Title VII by defendant WSSC. Plaintiff had previously appealed her termination to the Department of Personnel of the State of Maryland. Following a hearing which lasted several days, a Hearing Officer concluded in a Proposal for Decision dated May 4, 1989 that plaintiff had been insubordinate as an employee and that the WSSC had met its burden of proving that she should be separated from her position as Construction Inspector II. By Order of the Secretary of the Department of Personnel dated July 5, 1989, the Hearing Officer's findings and conclusions were adopted as final, and an Order was entered directing that plaintiff be separated from her position with the WSSC effective September 22, 1988. These findings of the EEOC and of the Maryland Department of Personnel constitute significant evidence in this case and support this Court's conclusion that plaintiff was not fired in retaliation for the exercise by her of her Title VII rights. *See Ross, supra* at 363; *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 459 (4th Cir.1989).

Even were the Court to find that plaintiff had made out a *prima facie* case of retaliation, it is clear from the evidence that defendant has articulated legitimate nondiscriminatory reasons for the termination of plaintiff's employment in September of 1988. Moreover, the credible evidence in this case discloses that the reasons given by defendant for terminating plaintiff's employment were not pretextual. The testimony of defendant's witnesses, including Rice, Bond, Stultz and Crean will be credited. Their versions of the critical events were consistent, and the testimony of each of them corroborates that of the other.

What the evidence discloses in this case is an attempt by a female employee to insulate herself from orders given to her by her male superiors. She sought to attain this objective by continually charging her male superiors with sex discrimination when she was disciplined or ordered to do something with which she disagreed.[10] Plaintiff was the type of person who would never admit to being wrong.[11] When she was subjected to criticism or valid disciplinary action, she would react in a defiant and accusatory manner.[12] It was her continuing insubordination and refusal to follow orders of her superiors which eventually led to the termination of her employment. Plaintiff certainly had the technical ability to perform her duties in an entirely satisfactory manner. It was her attitude and personality which ultimately led to her dismissal.

An employee subjected to an adverse employment action is not entitled to a recovery under Title VII if the action is the result of a personality conflict. *See Windom v. City of St. Louis*, 427 F.Supp. 806, 813–14 (E.D.Mo.1977), *aff'd,* 568 F.2d 78 (8th Cir.1977). As Judge Northrop of this Court said in *Bradington v. International Business Machines Corp.*, 360 F.Supp. 845, 854 (D.Md.1973), *aff'd,* 492 F.2d 1240 (4th Cir.1974):

> Quite possibly [plaintiff's] difficulties may have arisen from a personality conflict.... This personality conflict generated antipathy and professional incompatibility which might have made it more difficult for the plaintiff to perform. But this certainly does not translate into discrimination. An employer is not required to like his employees.

Little credit will be given by the Court to plaintiff's expansive account of various critical events in this case. Her all-

---

**10.** For example, plaintiff filed a charge of discrimination with the EEOC in 1987, shortly after Byars gave her an oral warning for 4 unscheduled absences. Charge No. 120–87–1035.

**11.** In her testimony, plaintiff admitted that she was "opinionated."

**12.** In challenging as a violation of Title VII her 1987–1988 performance appraisal which found

plaintiff's overall performance to be "Fully Satisfactory," plaintiff stated: "My performance evaluation as amended is a crude, systematic, premeditated distortion of my professional abilities based on the limitations of management as perpetrated against other women and minorities to destroy their professional standing."

consuming commitment to Title VII principles affected all aspects of her employment relationship. At various times in 1987 and 1988, plaintiff accused defendant WSSC of sex discrimination, race discrimination, sexual harassment and discriminatory retaliation. Although plaintiff had every right to speak out on behalf of her cause and to be the activist that she was, she went too far when she permitted her beliefs to adversely affect her day-to-day employment activities. The protection afforded by Title VII is not absolute, and it has been recognized that otherwise protected conduct may be so disruptive or inappropriate as to fall outside the statute's protection. *Rollins v. State of Fla. Dept. of Law Enforcement,* 868 F.2d 397, 401 (11th Cir.1989); *Gonzalez v. Bolger,* 486 F.Supp. 595 (D.D.C.1980). Title VII does not afford an employee unlimited license to complain at any and all times. *Hochstadt v. Worcester Foundation for Experimental Biology,* 545 F.2d 222, 233 (1st Cir.1976). As the Fifth Circuit said in *Rollins, supra* at 401:

> We have held that to qualify for the protection of the statute, the manner in which an employee expresses her opposition to an allegedly discriminatory employment practice must be reasonable. This determination of reasonableness is made on a case by case basis by balancing the purpose of the statute and the need to protect individuals asserting their rights thereunder against an employer's legitimate demands for loyalty, cooperation and a generally productive work environment.

Applying a balancing test here and weighing the defendant's legitimate demands for loyalty, cooperation and a generally productive work environment against plaintiff's right to espouse Title VII principles, this Court finds and concludes that plaintiff acted unreasonably. Plaintiff was hostile, intemperate and disruptive in her business dealings with her supervisors and with other employees of defendant. The manner in which she espoused her cause antagonized both superiors and colleagues and impaired the morale of her employment unit. Plaintiff's conduct thus falls outside the protection of the statute, and

her own unreasonable acts thus constituted an independent, legitimate basis for the adverse action taken by defendant WSSC.

In support of her claim of retaliation, plaintiff has repeatedly in these proceedings referred to the consent decree in the *NOW* case and to a settlement agreement reached in an earlier case she filed with the EEOC. Both of these matters were settled by agreement of the parties, and plaintiff relies in this case on the fact that aspects of those settlements were favorable to her. But what occurred in earlier years under other circumstances has little relevance to the critical events in 1987 and 1988 which are at issue here. The evidence produced in this case does not indicate that defendant retaliated against plaintiff because of concessions made by it in settling earlier cases.

Relying on *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), plaintiff has also argued that this is a "mixed motive" case because defendant's discriminatory intent to retaliate was a motivating and substantial factor in the adverse employment action. Such reliance is misplaced. As discussed herein, plaintiff was properly disciplined by defendant, and her discharge resulted from the accumulation by her of five PANS within a one year period.

## IV

### Other Motions

Also pending in this case are plaintiff's motion for injunctive relief and plaintiff's motion for attorneys' fees. For the reasons set forth herein, plaintiff is not the prevailing party in this case. Accordingly, plaintiff is not entitled to injunctive relief or to an award of attorneys' fees. Both of plaintiff's pending motions will therefore be denied.

## V

### Conclusion

For all these reasons, defendant's motion for judgment notwithstanding the verdict will be granted, and judgment will be en-

tered in favor of defendant WSSC as to the claims asserted by plaintiff in this case. Plaintiff's post-trial motions will be denied. No costs will be assessed inasmuch as plaintiff instituted this civil action *pro se.* An appropriate Order will be entered by the Court.