64 F.3d 658
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Deborah Sue PAGANA-FAY, Plaintiff-Appellant,
v.
WASHINGTON SUBURBAN SANITARY COMMISSION, Defendant-Appellee,
and
Richard Hocevar; Herbert I. Butler; Jack C. Gilbert;
William S. Lindung; Stephen Profilet; Robert
Bond; John Byars; Roger Stultz;
Richard A. Rice; Michael
Crean, Defendants.
 No. 92-1935.
 United States Court of Appeals, Fourth Circuit.
 Argued: June 5, 1995.
Decided: August 15, 1995.
 
 ARGUED: Erroll D. Brown, Landover, MD, for appellant. Sheila Day Collins, Associate Counsel, Washington Suburban Sanitary Commission, Laurel, MD, for appellee. ON BRIEF: Nathan J. Greenbaum, General Counsel, Joel A. Kramer, Associate Counsel, Washington Suburban Sanitary Commission, Laurel, MD, for Appellee.
 Before HALL and MURNAGHAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Appellant, Deborah Sue Pagana-Fay ("Pagana-Fay"), was employed by Appellee, the Washington Suburban Sanitary Commission ("WSSC"), from July of 1968 to September of 1988 as a construction inspector. During her employment with the WSSC, the WSSC had adopted a standardized policy whereby an employee who had been disciplined by receiving five Personnel Action Notifications ("PANs") within a period of one year was subject to discharge. Beginning in April of 1988 and continuing until August of 1988, Pagana-Fay received five PANs for insubordination, for refusing to comply with orders from her supervisor, and for hindering an official investigation. The WSSC accordingly discharged her on September 21, 1988. Pagana-Fay has alleged here that her discharge was violative of Title VII of the Civil Rights Act.
 
 
 2
 The events surrounding Pagana-Fay's discharge occurred as follows. In the Fall of 1987, Pagana-Fay was assigned to work under Robert Bond's supervision. Bond was Pagana-Fay's direct supervisor and was responsible for assigning her to particular construction contracts. On April 13, 1988, Bond found Pagana-Fay in the office instead of at her construction site. Bond ordered her to stop what she was doing and report to her assigned project. Pagana-Fay refused, and remained in the office for 35-40 more minutes before leaving for her assigned project. For her refusal to follow his order, Pagana-Fay received her first PAN for Insubordination.
 
 
 3
 Later the same day, Bond went to Pagana-Fay's position to inform her that she had been assigned to an upcoming project and asked her to report to a pre-construction meeting the next morning. Pagana-Fay informed Bond that she would not take the assignment to that project and would sue Bond if he assigned her to it. Bond returned to the office and issued Pagana-Fay's second PAN, for Gross Insubordination.
 
 
 4
 Shortly thereafter, on June 6, 1988, Bond visited Pagana-Fay at her construction site. He was accompanied by Wayne Wilson, a contract manager. The next day, on June 7, 1988, Bond found a memorandum from Pagana-Fay stating that she found his behavior during the site visit unacceptable. She accused Bond of "fondling his genitals" and using unsavory terms in reference to his genitals. Upon receipt of the memo, Bond requested Rice, his supervisor, to investigate the allegations. Rice convened a meeting with Bond, Wilson, and Pagana-Fay to discuss the incident. As a result of that inquiry, one of a series of investigations necessitated by Pagana-Fay's repeated complaints, Rice issued to Pagana-Fay her third PAN, for Serious and Prolonged Interference with the Production of Others.
 
 
 5
 On August 10, 1988, Pagana-Fay called Roger Stultz, the Acting Construction Manager, to complain about a backhoe operator, who was an employee of another contractor at her assigned project. She claimed that the backhoe operator had deliberately struck a trench box on which she was standing, causing the dirt to fall away from her feet, and had also dumped dirt down her back. Stultz called a meeting to investigate the complaint at the project site for the next morning, and told Pagana-Fay to be there. At the meeting, Pagana-Fay insisted that the backhoe operator be ordered off the site, but Stultz refused. Pagana-Fay immediately left the meeting after threatening to sue Stultz, the contractor, and anyone else involved in the job, although Stultz had told her not to leave until the meeting was over. As a result of the incident, Pagana-Fay received her fourth PAN, for Insubordination.
 
 
 6
 An investigation into her charges against the backhoe operator was subsequently initiated by Rice. In connection therewith, Pagana-Fay was told by her supervisor, Bond, to report to the WSSC's Internal Investigations Unit. Upon arrival at the Investigations Unit, Pagana-Fay refused to discuss the incident with the WSSC's Internal Investigations Officer, Helmut Bottjer, because he was male. When told there were no female investigators, she left the office without any discussion of the incident. As a result of that incident, Pagana-Fay received her fifth and final PAN, for Hindering an Official Investigation.
 
 
 7
 Upon receipt of five PANs within that six-month period, Pagana-Fay was recommended for termination pursuant to the WSSC's standardized personnel policy. Pagana-Fay appealed the recommendation for termination through the WSSC's internal appeals process, but the recommendation to discharge was affirmed. She then appealed to the Secretary of Personnel for the State of Maryland who, after an extensive hearing, also upheld her termination. Pagana-Fay subsequently filed a complaint with the EEOC, which also found no violation of Title VII of the Civil Rights Act of 1964.
 
 
 8
 On March 22, 1990, Pagana-Fay filed suit pro se in the United States District Court for the District of Maryland against the WSSC and 14 individual defendants, alleging violations of Title VII of the Civil Rights Act of 1964 and certain other violations. Upon appointment of counsel by the district court, an amended complaint was filed on August 9, 1990. The amended complaint set forth six counts: (1) retaliation, (2) sexual harassment, (3) mixed motives, (4) negligent supervision, (5) breach of contract, and (6) defamation. As a result of pre-trial motions, Count Six was dismissed, as were the individual defendants, and summary judgment was entered in favor of all defendants on Counts Four and Five.
 
 
 9
 Upon passage of the Civil Rights Act of 1991, Pagana-Fay moved to reinstate her demand for a jury trial based on the contention that the Act's new jury trial provisions should apply retroactively to her claim. The district court granted her demand for reinstatement, and ruled that the case proceed with simultaneous jury and non-jury trials. This procedure was designed to avoid a retrial in case of a later ruling by the Supreme Court or Fourth Circuit resolving the issue of retroactivity.
 
 
 10
 The jury found in favor of Pagana-Fay on both her sexual harassment and retaliation claims, and awarded damages in the amount of $50,000 on the sexual harassment claim; no damages were awarded on the retaliation claim. The district court, however, subsequently entered judgment in the WSSC's favor, and vacated the jury verdict on the ground that the jury trial provision of the Civil Rights Act of 1991 did not apply retroactively to the case.* Pagana-Fay filed a timely notice of appeal from the district court's judgment in favor of the WSSC.
 
 
 11
 The issues presented in the instant appeal are: (1) whether the district court erred in granting judgment in favor of the WSSC on Pagana-Fay's sexual harassment claim, and (2) whether the district court erred in granting judgment in favor of the WSSC on PaganaFay's retaliation claim. We affirm on the basis of the district court's persuasive opinion. See Pagana-Fay v. Washington Suburban Sanitary Commission, 797 F.Supp. 462 (D.Md.1992).
 
 
 12
 AFFIRMED.
 
 
 
 *
 The Supreme Court has since decided that provisions of the Civil Rights Act of 1991 providing for trial by jury do not apply retroactively to a case which was pending on appeal when the Act was enacted. See Landgraf v. USI Film Products, 114 S.Ct. 1483 (1994)